**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of**<br>**Douglas R. Miller**<br>**United States Magistrate Judge** | **101 West Lombard Street**<br>**Baltimore, Maryland 21201**<br>**MDD_DRMChambers@mdd.uscourts.gov**<br>**(410) 962-7770** |

March 18, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:    *Derek M. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
       Civil No. 24-3520-DRM

Dear Counsel:

On December 5, 2024, Plaintiff Derek M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 7) and the parties' briefs (ECF Nos. 13, 16 and 17). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 30, 2022, alleging a disability onset of December 1, 2028. Tr. 27. Plaintiff's claims were denied initially and on reconsideration. Tr. 100-112. On December 13, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 44-72. Following the hearing, on January 16, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 24-43. The Appeals Council denied Plaintiff's request for review, Tr. 5-11, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on December 5, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 2

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful activity from his alleged onset date of December 1, 2018, through his date last insured of December 31, 2021." Tr. 29. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "traumatic brain injury (TBI) with balance problems, migraine headaches and light sensitivity, disorders of the skeletal spine, obsessive compulsive disorder (OCD) and anxiety disorder." Tr. 30. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 30. The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except: The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, and balance occasionally. He must avoid work in direct sunlight. He is limited to exposure to moderate noise and must avoid work areas with overhead fluorescent lighting. He is able to perform simple, routine and repetitive tasks for periods of 2 hours at a time before needing a break. Unable to perform high quota production rate pace jobs where workers must meet strict, hourly quotas. He is able to interact with supervisors, coworkers, and the public occasionally. He is able to tolerate few changes in a routine work setting defined as can adapt to gradual or occasional changes in a routine work environment. His time off task can be accommodated by normal breaks.

Tr. 32. The ALJ determined that Plaintiff was unable to perform past relevant work as a satellite communications operator, Tr. 37, but could perform other jobs that existed in significant numbers in the national economy such as a postage machine operator, price marker, and routing clerk. Tr. 38. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 39.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 3

1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff raises two arguments on appeal. First, he argues that the ALJ did not provide any narrative discussion to bridge the evidence he cited in his decision to the limitation in the RFC against "high quota production rate pace jobs where workers must meet strict, hourly quotas." ECF No. 13 at 9-14. Plaintiff also argues that the ALJ based his decision on an inadequate hypothetical he posed to the vocational expert ("VE") which included the same limitation without defining that term or setting parameters. ECF No. 13 at 15-17.

Defendant counters that the ALJ addresses the limitation in his decision, a careful review of the decision shows it is supported by substantial evidence, and the limitation as articulated properly accounted for Plaintiff's moderate limitation in concentration, persistence and pace. ECF No. 16 at 9-10. Defendant argues that even if the ALJ did not expressly identify the evidence on which he relied, other evidence can provide the support needed for the limitation, that the ALJ decided record evidence supported this limitation, and that this analysis by the ALJ provided the "logical bridge" required. ECF No. 16 at 10-11. Defendant adds that Plaintiff's challenge fails because he does not argue he cannot perform non-production type work, he does not identify any RFC provision the ALJ should have included instead, he does not explain how a more detailed decision would have changed the outcome, and that it is Plaintiff's burden to show his functional limitations prevent him from performing the work. ECF No.16 at 13.

As to Plaintiff's challenge to the hypothetical the ALJ proposed to the VE, Defendant argues the ALJ sufficiently defined "production rate pace jobs as those requiring workers to meet strict, hourly quotas," and the ALJ explained why the limitation was needed, which provided "the window to his reasoning." ECF No. 16 at 16. Defendant further argues that specialized terminology is not unusual in agency rulings; the limitation "production rate" is a known term of the Department of Labor; the dictionary definition of each word provides the meaning needed here; that neither Plaintiff, his attorney, nor the VE expressed confusion about the term in the hypothetical; and that Plaintiff forfeited this issue because the attorney representing him at the hearing did not raise the issue or question the VE or ALJ about it.[3] ECF No. 16 at 18.

---

[3] The Commissioner contends that Plaintiff forfeited any challenge to the language used in the hypothetical posed to the VE by failing to raise the issue during the VE's testimony (during which the expert expressed no confusion). ECF No. 16 at 18-19. In support, the Commissioner relies exclusively on a decision from the Middle District of North Carolina. *Id*. That case is not binding on this Court, and the Court has been unable to identify any controlling authority adopting such a

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 4

The Court concludes that the ALJ's decision is not supported by substantial evidence. Courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations" when reviewing for substantial evidence. *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *2 (D. Md. Sept. 3, 2021) (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal citation omitted)). Agency conclusions must be stated in terms the Court can understand for the Court to conduct substantial evidence review.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), as amended (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine whether the RFC finding was supported by substantial evidence. *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at n.5. The panel emphasized that, on remand, the ALJ must clarify how long and under what conditions the claimant could sustain focus and remain on task. *Id*. And although the court in *Thomas* identified additional grounds for remand, later Fourth Circuit decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. In *Trena Sue*, the court likened the use of the phrase "fast paced production" to the terms in *Thomas*, both in "form and defect." *Trena Sue*, 2021 WL 4034264 at *4.

Additionally, in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), the Fourth Circuit held that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," which is similar to the phrase used here, "high quota production rate pace jobs where workers must meet strict, hourly quotas," was not an adequate description of the limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his RFC determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended ... and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion") (internal quotation marks omitted)).

The term used here, "high quota production rate pace jobs where workers must meet strict, hourly quotas," is analogous to the terms used in *Thomas* and *Linger*, in that it is not defined by regulation and is susceptible to varying interpretations.

---

forfeiture rule in this context. *See also Geneva W. v. Comm'r, Soc. Sec. Admin.,* No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("while the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported her findings with substantial evidence. *See* 42 U.S.C. § 405(g).")

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 5

Defendant argues that "[s]pecialized terminology is not unusual or unexpected in agency ruling" and that courts can "seek input about specialized terms when necessary." ECF No. 16 at 17. Defendant additionally argues that "'production rate' is a known vocational term used by the Department of Labor." *Id.* In support of the latter contention, Defendant points to *Social Security Program Operation Manual System* (POMS) DI 25001.001, Medical and Vocational Quick Reference Guide, specifically its statement that "[t]he Department of Labor rated an occupation as light when it requires . . . working at a production rate while constantly pushing or pulling materials even though the weight of the materials in these situations is negligible." ECF No. 16 at 17-18.

The analysis here is similar to that in *Jason M. v. Bisignano*, in which this Court analyzed the presence of the phrase "at a production rate pace" in the definition of "Light Work" in U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). No. DRM-25-0358, 2026 WL 523879 at *4 (D. Md. Feb. 25, 2026).

The definition of "Light Work" and the summary of that term's use as a vocational concept in POMS § DI 25001.001 reads:

**43. Light work**

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

The Department of Labor rated an occupation as light when it requires walking or standing to a significant degree, sitting most of the time while pushing or pulling arm or leg controls, *or working at a production rate while constantly pushing or pulling materials even though the weight of the materials in these situations is negligible.* For the range of lifting and carrying requirements the DOL considered when determining whether to classify work as light, see <u>DI 25001.001A.20</u>, in this section.

Light work usually

- requires walking or standing for approximately six hours of the day.

- requires only occasional, rather than frequent, stooping and no crouching.

- involves grasping, holding, and turning objects, but does not require use of the fingers for fine activities to the extent required in most sedentary work.

- includes the functional capacity to perform sedentary work.

- performed primarily in one location with the ability to stand being more critical than the ability to walk.

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 6

SSA POMS § DI 25001.001(A)(43), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (last visited March 18, 2026).

This passage and the use of the italicized phrase within it are similar to their counterparts in DOT Appendix C, and the analysis is similar.[4] First, that the phrase appears within this definition and summary of Light Work, does not make that phrase "a term of art with unambiguous meaning." *Jason M.*, 2026 WL 523879 at *4. The phrase "at a production rate" is not defined anywhere in this summary of "Light Work," and it is used only in conjunction with other phrases, terms or requirements to assist in the classification of jobs as "Light Work" or not. *See id*. Even if the phrase "at a production rate" "were rendered unambiguous by its inclusion" in the section cited, it is not the precise phrase at issue in this case, which is "production rate pace." *See id*.

Finally, Defendant argues the phrase at issue does "not involve particularly complicated terms" and the dictionary definitions of "production" and "rate" "precluded jobs like those on a manufacturing assembly line" and so the VE identified the three representative jobs instead. ECF No. 16 at 18. However, Defendant cites no authority for this argument. Without any clear definition of "high quota production rate pace jobs where workers must meet strict, hourly quotas," it is not possible for the Court to discern whether the RFC determination was supported by substantial evidence, nor whether it was possible for the VE to know whether a person with this limitation could perform the job functions of a postage machine operator, price marker, or routing clerk.

Because the case is being remanded on other grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

---

[4] In context, the phrase "The Department of Labor rated an occupation as light when…" appears to be a reference to DOT Appendix C, because the introduction to POMS § DI 25001.001 states that the section includes, *inter alia*, "Terms relating to jobs or occupations that share the same definition that the Department of Labor uses in its publications, such as the Dictionary of Occupational Titles (DOT); or Selected Characteristics of Occupations (SCO) defined in the DOT."

*Derek M. v. Frank Bisignano*
Civil No. 24-3520-DRM
March 18, 2026
Page 7

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge